**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Doreen Denise Meyer,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-20-00802-PHX-DJH<br><br>**ORDER** |

Plaintiff seeks judicial review of the Social Security Administration ("SSA") Commissioner's decision denying her application for SSA disability benefits. Plaintiff filed her Opening Brief (Doc. 17) on December 7, 2020. Defendant filed a Response Brief on January 6, 2021 (Doc. 18), and Plaintiff filed her Reply Brief (Doc. 19) on January 21, 2021.

**I.  Background**

On April 4, 2016, Plaintiff filed applications for SSA benefits for disabilities beginning on June 13, 2015. (R. at 23). An Administrative Law Judge ("ALJ") denied the applications on January 7, 2019, and the Appeals Council declined to review the ALJ's decision. (R. at 8, 20). This appeal followed.

Plaintiff had testified that, due to pain in her neck, back, and hip, she could only stand and walk for five to ten minutes, sit for thirty minutes, and needed to rest three times a day for at least thirty minutes. (R. at 28–29). However, the ALJ rejected the claimed severity of Plaintiff's symptoms and found that other other evidence showed Plaintiff had

"the residual functional capacity to perform light work . . . ." (R. at 28). As stated in the decision, the ALJ found the following:

> [T]he claimant's medically determinable impairments could reasonably be expected to cause symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. at 29). Some of the evidence supporting this finding consisted of medical records indicating that a cervical fusion surgery that Plaintiff underwent in December 2015 successfully mitigated Plaintiff's pain. (R. at 30). Some was evidence of Plaintiff's work history as a nail stylist and hairdresser, which the ALJ found indicated "greater functioning" than Plaintiff had testified to. (R. at 29). And some was the opinion evidence of three doctors, Dr. Bendheim, Dr. Keen, and Dr. Coleman, who all indicated that Plaintiff could sit, stand, and walk for at least three hours in an eight-hour workday. (R. at 31–32). The ALJ concluded that because Plaintiff could perform her past relevant work, she was not disabled. (R. at 33).

Plaintiff challenges the decision and argues the ALJ committed legal error, failed to support the decision with satisfactory evidence in the record, and improperly weighted the opinions of Dr. Keen and Dr. Coleman. (Doc. 17).

## II. Standard of Review

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's

- 2 -

decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ typically follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III. Analysis

The Court finds that, in its substance, Plaintiff's Opening Brief identifies three issues. First, whether it was legal error for the ALJ to reject Plaintiff's testimony regarding the severity of her symptoms. Second, whether there was clear and convincing evidence warranting rejection of Plaintiff's testimony. And third, whether substantial evidence supports heavily weighting Dr. Keer and Dr. Coleman's testimony.

#### a. Whether the ALJ Erred in Rejecting Plaintiff's Testimony

The ALJ found Plaintiff's medically determinable impairments could cause the symptoms to which Plaintiff testified. (R. at 29). However, because both Plaintiff's work history and medical evidence showed the symptoms were not as severe as Plaintiff claimed,

the ALJ found Plaintiff could perform light work. (*Id.*)

Plaintiff argues that it was "legal error" for the ALJ to reject the symptom's severity as testified to by Plaintiff on the basis that the symptoms were not consistent with the medical evidence. (Doc. 17 at 13). Plaintiff argues she need only "establish a medically determinable impairment that could reasonably be expected to cause the claimant's symptoms, but a claimant is not required to provide medical evidence of the severity of these symptoms." (*Id.*)

It is true that an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). But the ALJ may certainly "reject the claimant's testimony about the severity of [the] symptoms" provided that the ALJ also explains her decision "by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015). Therefore, the ALJ did not err as a matter of law by rejecting Plaintiff's testimony about the severity of her symptoms.

### b. Whether the ALJ Supported its Decision to Reject Plaintiff's Testimony with Clear and Convincing Evidence

Plaintiff argues the ALJ's evidence cited in support of the decision to disregard her testimony does not reflect the record as a whole. An ALJ cannot "cherry pick" evidence. *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (quoting *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)). That is, the evidence the ALJ bases the decision on must exemplify the broader record. *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Brown-Hunter*, 806 F.3d at 495 (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014)).[1]

---

[1] Defendant notes its contention that the "substantial evidence standard" governs this review, but it argues the ALJ's decision survives even under a "clear and convincing" standard. (Doc. 18 at 16 n.10).

Plaintiff essentially provides two examples of what she characterizes as cherry picking: the evidence relating to Plaintiff's cervical fusion surgery, and the evidence relating to her work history.

### i. Cervical Fusion

The first bunch of cherries relate to the ALJ's findings on the success of the Plaintiff's December 10, 2015 cervical fusion surgery. The ALJ notes that "[d]espite the surgeries, records reflect continuing pain management treatment of cervical, lumbar and right hip pain. Notwithstanding, February 26, 2018 pain specialist records reflect treating source opinion that cervical fusion surgery was 80% successful . . . ." (R. at 30 (citing R. 718)). Plaintiff argues this success was only temporary because the record reflects that during her February 26 visit to the pain specialist, she reported to the specialist that her "post-procedure pain relief is approximately 0%." (R. at 719).

The Court does not share Plaintiff's interpretation of the February 26 consultation in which she complained of "Back/Coccyx Pain." (*Id.*) Nothing in that record indicates that the cervical fusion surgery, which mitigated pain in Plaintiff's neck, was less than 80% successful. In addition, the February 26 record was not the only record the ALJ cited to show the surgery was successful. The ALJ cited a February 4, 2016 record stating that, six weeks after the surgery, Plaintiff was "doing really well." (R. at 30 (citing R. 502)). The ALJ also cited an October 25, 2018 consultative neurological evaluation report in which Dr. Paul Bendheim noted "cervical fusion surgery and the claimant's report that she was not bothered by consistent pain in her neck . . . ." (R. at 31); (*see also* R. 1144 ("She is not bothered by consistent pain in her neck, but she has decreased range of motion.")). The Court finds that these records, which the ALJ cited, provide clear and convincing evidence that the cervical fusion surgery mitigated a substantial amount of pain.

The ALJ also noted that "[a]lthough subsequent visit records reflect continued neck pain, the claimant, in August 2, 2016 records, reported that [cervical fusion] surgery was successful and that it 'saved my life' . . . ." (R. at 30 (citing R. at 571)). Plaintiff argues this statement, while "technically correct" gives the "inaccurate impression that results

from the surgery were inconsistent" with her overall condition. (Doc. 17 at 15). While it helped relieve 80% of her pain, Plaintiff argues that "the actual physical examination of that date showed . . . increased pain with range of motion and positive Spurling's test." (*Id.*) Plaintiff also asserts she said the surgery "saved my life" because her pain prior to the surgery prompted suicidal thoughts. (*Id.*) But the Court has already demonstrated where the ALJ cited to other, clear and convincing documents, showing that the cervical fusion surgery was largely a success. And if the surgery "saved" Plaintiff from self-inflicted harm, that is at least some evidence of the surgery's success. *See Thomas*, 278 F.3d at 954 (stating that an ALJ's reasonable interpretation must be upheld).

Plaintiff argues the ALJ relied too heavily on periods of relief after pain treatment, which alone cannot constitute clear and convincing reasons to discredit her symptom testimony. (Doc. 17 at 16–17). It is true that a "brief period or reprieve following treatment" is not clear and convincing evidence that pain was controlled. *Lopez v. Colvin*, 194 F. Supp. 3d 903, 911 (D. Ariz. 2016). However, the Court finds that the October 2018 consultation with Dr. Bendheim, in which she described the then three-year-old surgery as a success, cannot fairly be construed as a brief period or reprieve. (R. at 1144). The ALJ's opinion, then, was not based solely on the brief period or reprieve following treatment.

### ii. Work Activity

The second bunch of cherries relates to Plaintiff's part-time work as a nail technician and hairdresser. The ALJ found Plaintiff's part-time work as a nail technician "seemed to necessitate significant sitting and neck posturing downwards inconsistent with the claimant's testimony of an inability to perform such activity." (R. at 29). Plaintiff argues that she testified that this very sitting and looking down is what caused her pain and that the "ALJ did not explain *how*" her attempts to work show greater functioning. (Doc. 17 at 18).

The ALJ noted that while her work was not a substantial gainful activity, "it indicates significant physical capability for work, which is inconsistent with the severity of symptoms and limitations alleged by the claimant." (R. at 26); *see also* 20 C.F.R. §

404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). It is plain from reviewing the ALJ's decision that her continued work, in connection with the other evidence (medical and otherwise) indicating that Plaintiff had the capacity for light work, formed the basis for *how* the ALJ decided her work demonstrated grater functioning that she had claimed. (R. at 29).

Plaintiff also notes that the vocational expert testified that someone who needs to rest for half an hour three times a day could not perform sustained work. (R. at 222). And because she also testified to needing to rest that amount, Plaintiff argues the ALJ would be required to find her disabled. (Doc. 17 at 19).

It is true that Plaintiff testified she needed to rest "two to three times a day" for "a good 30 minutes" and that sometimes she is "down for hours." (R. at 216). However, the Court reject's Plaintiff's characterization of the vocational expert's testimony. The specific question asked was whether "[a]n individual with the same age, education, and prior relevant work who is limited to lifting 10 pounds; can sit 10 to 15 minutes—or excuse me, 5 to 10 minutes at a time, stand 5 to 10 minutes at a time, or walk 5 to 10 minutes at a time; generally requires only occasional handling, fingering, and feeling. And the individual would need to recline and be off-task for a minimum of 30 minutes three times a day" would be able to perform prior relevant work. (R. at 221–22). To this question, the vocational expert said no. (R. at 222).

This question was asked, presumably, because Plaintiff had testified to only being able to sit or stand for five-minute to ten-minute intervals. (R. at 28–29). But these claimed symptoms were inconsistent with the record's other evidence, as the ALJ explicitly found. For example, the ALJ noted that Dr. Bendheim, as well as Dr. Keer and Dr. Coleman all found that Plaintiff could sit, stand, and walk for at least three hours. (R. at 31–32). Furthermore, the ALJ noted that physical examinations mostly demonstrated Plaintiff had normal bilateral lower extremity strength and that she did not use an assistive device for walking. (R. at 30 (citing R. at 512, 568, 573, 637, 661)). All this shows that the ALJ

properly rejected the vocational expert's answer to a question that was asked under a dubious premise.

Ultimately, the Court finds the ALJ's finding that Plaintiff's work history, in combination with other evidence, contradicted her claimed symptoms was based on clear and convincing evidence.

### c. Whether Dr. Keer & Dr. Coleman's Opinions Warranted Greater Weight

Finally, Plaintiff argues that the ALJ erred by "relying on opinions from physicians who reviewed available records for the state agency . . . who neither examined Meyer nor reviewed a complete record." (Doc. 17 at 19). Specifically, Plaintiff notes the opinions do not incorporate records made after the opinions were written. (*Id.* at 20).

To begin, it is not legal error to give greater weight to the opinion of a physician who did not review the entire record. *Meadows v. Saul*, 807 F. App'x 643, 647 (9th Cir. 2020) ("There is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time.").

In addition, the ALJ did not solely rely on these two doctors' opinions. The ALJ also cited Dr. Bendheim several times and assigned it "limited weight." (R. at 31–32). The ALJ assigned greater weight to Dr. Keer and Dr. Coleman's opinions because they opined that Plaintiff was capable of light exertion (including sitting and walking for six hours in an eight-hour workday). (R. at 33). These opinions were "more consistent with the objective medical evidence." (R. at 33); *see also* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The Court has already noted the physical examinations and ambulatory ability that indicate Plaintiff was capable of light exertion. There was, therefore, substantial evidence supporting the ALJ's decision to heavily weight Dr. Keer and Dr. Coleman.

### IV. Conclusion

For these reasons, the Court finds the ALJ did not err in reaching her decision.

…

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly.

Dated this 6th day of July, 2021.

*Honorable Diane J. Humetewa*
United States District Judge